Joseph C. WILSON, d/b/a J & J Decorators,
Appellant (Plaintiff below),

v.

TREASURE CHEST HOMES OF WYOM-
ING, INC., Appellee (Defendant below).

No. 3223.

Supreme Court of Wyoming.

April 23, 1964.

Arthur F. Fisher, Casper, for appellant.

Donald E. Chapin, Casper, for appellee.

Before PARKER, C. J., and HARNS-
BERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the
opinion of the court.

Plaintiff filed suit for $872 on open ac-
counts for work, material, and services
supplied in the painting of three houses.

Defendant denied generally and alleged as
an affirmative defense that while plaintiff
did furnish work, labor, and material to
the designated houses his painting was so
unsatisfactory that defendant was required
to have the houses completely repainted
so that there was a total failure of con-
sideration. A pretrial conference was held
in which as shown by the court's order
defendant admitted that the work alleged
in the complaint had been done, the claimed
amount was reasonable, and remained un-
paid. Defendant asked permission to
amend its answer and counterclaim for
$1,155 because of amounts necessarily and
reasonably expended by defendant in re-
painting seven houses at $165 each as a
result of a breach by plaintiff of his
warranty against defects of workmanship
and material, and plaintiff was to have five
days after receipt of the amended pleading
to respond. Plaintiff indicated that the
defense to the counterclaim would be a
denial and asserted that there was no
breach of warranty, that any defect in
plaintiff's work was because of defective
siding. By agreement, plaintiff's complaint
was amended to name as defendants the
copartnership of Treasure Chest Homes and
the copartners comprising the same, Del
Mar Homes, Inc., and Sun Homes, Inc.,
but the title of the case was not changed
in conformity with the amendment. No
further pleadings were filed. When the
cause came on for hearing before the court,
plaintiff's counsel urged that defendant had
filed no counterclaim and should be re-
stricted to the matters set forth in the
pretrial order with the only defense as to
workmanship and materials. On interroga-
tion by the court, counsel agreed to try the
case on the matters set forth in the pretrial
report, thereby waiving defendant's failure
to plead after the conference. The court
entered a judgment allowing plaintiff the
$872 and defendant its counterclaim of
$1,155, and plaintiff has appealed, alleging
that (1) the judgment was not supported
by evidence of a warranty against defects
of workmanship and material, and even if
such warranty was present, there was no

evidence of a breach; (2) there was no evidence of peeling of the paint on the houses being caused by defective workmanship and materials; and (3) that even assuming appellant to have undertaken the repainting of the peeling houses he had a right to terminate the contract upon the defendant's breach thereof in allowing purchasers of houses to paint the same themselves.

The record discloses procedures which under the best practices should be avoided by both court and counsel. Noncompliance with the pretrial order concerning amendment of the pleadings encouraged lack of a plan in the trial and uncertainty was compounded by the reliance of both parties upon evidence which although improper as being hearsay was admitted without objection on this ground. The crux of the present dispute arises from the difference in viewpoint as to the basis for a claimed violation of the agreements between the defendant, the general contractor, and the plaintiff, the subcontractor. The evidence shows that one such agreement related to the "Rocket" houses and another to the "Chateau" and that paragraph B. 1. of each agreement was identical, reading:

"B.   That the second party shall:

"1.   Provide all of the labor and material and to do all things necessary for the proper construction and completion of the work as more particularly described below and according to the plans and specifications and the job bid agreement which is attached hereto, incorporated, and made a part hereof and also in accordance with the construction requirements of the City and County of Natrona and State of Wyo. and the Federal Government, particularly the F.H.A. and V.A. Minimum Property requirements:"

The F.H.A. and V.A. minimum property requirements were not stated in the agreements. No plans, specifications, or job bid agreement was attached nor were any presented in evidence. Defendant seems to think that this was unnecessary and

argues, "We have here a situation between builder and painting contractor with a signed agreement, the primary purpose of which, for the benefit of both parties, was that the Federal Housing Administration be satisfied with the work done by the painting contractor so that Federal Housing Administration insurance could be obtained for the prospective purchasers, loans made and the houses sold by the builder."

Although this may well have been the ultimate purpose of the agreement there was no direct evidence that such a statement was contained in any written contract and neither was there any evidence of an oral agreement.

It is true that plaintiff upon cross-examination made certain admissions tending to imply that he was under an agreement which required him to respond to any complaint by the F.H.A. made within one year. The testimony in these instances follows:

"Q.   *   *   *   if you and Treasure Chest entered into a valid contract for painting the houses, you were obligated for the paint job for one year, were you not?   A.   I was obligated for the paint job, and. also had a contract on all the houses that they sold to people and let them do their own painting for a down payment."

"Q.   And didn't you also understand under your agreements that you were obligated for one year, under your paint agreement?   A.   Yes."

These statements taken alone could not supply any failure to prove specifically the nature of the allegedly broken agreement. Neither of the two written agreements in evidence contained F.H.A. or V.A. minimum property requirements nor were there attached any plans, specifications, or job bid agreement, and there was no evidence as to what these were. The court received in evidence a number of letters from the F.H.A. for the sole purpose of showing that complaints had been received, but there was no direct testimony of any agreement by plaintiff that he was obligated to respond to complaints from that source.

There was no competent evidence of plaintiff's failure to comply with the plans, specifications, and job bid agreement or minimum property requirements of the Government agencies. Additionally, a sample of the plywood used in the houses was introduced in evidence, which from observation, had building paper glued on the outside. There was testimony of McKendree, a paint contractor, that in his experience paint did not adhere to that type of siding, and defendant's manager, Crank, admitted that he was not using that type of siding and that "the trouble with it is the paint peels off."

We think there as no competent evidence showing a violation of the mentioned paragraph of the agreements by plaintiff and there was uncontradicted evidence before the court tending to show that the siding was not susceptible of a lasting paint job.

Defendant contends however that plaintiff agreed to repaint the houses, did repaint a great number of them, and was thereby obligated to continue. Nothing is before the court that there was any consideration for such an agreement. Plaintiff said the reason he undertook the repainting was his close relationship with Crank and his desire for further work but that he discontinued because:

"A. I went as far as I could, as long as my money lasted.

"Q. Well, it was only a question of your money ran out that you didn't continue to pursue the painting defects that Federal Housing had shown? A. The reason I didn't continue painting was because I thought I was doing Jerry Crank a favor, when he broke my contract and refused to release money to me I stopped it all at the time."

At most the defendant presents only intimation without authority of any nature that the agreement for the repainting was binding.

As to the judgment on plaintiff's complaint, there is no challenge and it should stand. That on the counterclaim is un-

supported by the evidence and should have been in favor of plaintiff. The cause is remanded for action of the trial court consistent with the views herein expressed.

Reversed and remanded.